**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CRIMINAL NUMBER 21-435** |
| | : | |
| | : | |
| **SAMUEL CHRISTOPHER FOX** | : | |

## SAMUEL FOX'S SENTENCING MEMORANDUM

Over a four-month period, from January through April of 2021, Samuel Fox, a quiet, self-described "loner," received the kind of kudos, attention, and approval from peers that he had always craved.  Sadly, these accolades were for behavior that was destructive to the very fabric of our democracy.  Mr. Fox now sees clearly that it is that very attention from others—compounded across hundreds of people—that made the conduct of those who breached the Capitol Building on January 6, 2021, particularly dangerous.

Mr. Fox, through undersigned counsel, submits this memorandum in aid of his sentencing hearing scheduled to occur on March 11, 2022. It is of utmost importance to Mr. Fox that this Court and the public understand that he now sees his actions on January 6, 2021, to be shameful.  He wishes to state plainly that his actions on that day were not worthy of admiration. His greatest fear as he looks back on his conduct on January 6, 2021, and the several months thereafter, is that others will believe that his conduct was not only worthy of admiration, but also emulation.  As he expressed when interviewed by law enforcement, he went to the Capitol to "see what would happen."  There is no doubt that he went from the Ellipse to the Capitol Building based on the encouragement of some of the speakers at the rally and the fervor of the

crowd. Mr. Fox does not blame anyone else – he is a grown man who made the bad decisions he made that day which have placed him and his family in peril. We point this out only to show that while he was regrettably one of the members of the mob, he was not one of the leaders.

To his credit, Mr. Fox has unambiguously accepted responsibility for his actions.  On November 5, 2021, he appeared before this Court and pled guilty to the charge of Parading, Demonstrating, or Picketing in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Mr. Fox fully acknowledges that he made a grave mistake in entering the Capitol. He is embarrassed about his conduct and makes no excuses. He stands ready to accept the consequences for his behavior while asking the Court to consider the impact that any sentence imposed will have on his fiancé, his two young boys, and his employees. They have already been impacted by his actions and he wants nothing more than to protect them from further harm.

This Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. §3553(a). In this case, understanding the full gravity of what occurred on January 6, 2021, and of his own role in those events,  Mr. Fox requests that the Court impose a non-custodial sentence in line with that recommended by the United States Probation Office. Mr. Fox makes this request not only for himself, but also for his young children, who would be substantially impacted by any period incarceration.

Mr. Fox is a devoted father, supportive fiancé, and responsible employer. He owns a small packing and moving company, Westmoreland Movers, in Latrobe, Pennsylvania.  He is proud that he is able to provide a living wage for eight to twelve employees in a small town where work is often scarce.  He goes out of his way to provide opportunities to trustworthy individuals whom other employers may not be willing to consider.  This is borne of his own personal experience addressing mental health concerns.  Mr. Fox was born into a working-class

2

family.  Both of his parents worked to provide for him and his two siblings.  Although his parents divorced when he was a teenager, their support for Mr. Fox never wavered.  He knows how lucky he is to enjoy such a close relationship with both of his parents.  Indeed, his embarrassment about his decisions on January 6th is heightened by the knowledge that he has disappointed the people who believed in him the most.

Mr. Fox is proud that he is able to provide for his own young sons through his hard work now.  He is the primary provider and care-taker for his sons, aged three and six years old.  Mr. Fox and his two children live together in a modest two-story home in Mt. Pleasant, Pennsylvania, the same town in which Mr. Fox was born.  It is primarily Mr. Fox who cares for the children.  From getting his children ready for school every morning to tucking them into bed every night,  it is Mr. Fox who takes care of the children primarily.  His number one priority is being a good father.  He helps them with homework, prepares their meals, talks them through tantrums, and plays make-believe games with them on the weekends.  This is all in addition to running his own company, which is his only source of income.  Indeed, between the pandemic and the negative publicity surrounding this case, Mr. Fox's business suffered. Nonetheless he has strived to keep as many employees as possible, knowing they depend on the work just as he does.

Were this Court to adopt the government's recommendation instead of the recommendation of the Probation Office, Mr. Fox and his family would lose much of what he has worked to build. His income from his moving company is the family's primary source of financial stability.  Being a small company, if Westmoreland Movers were to lose its owner for one month it would likely be harmed beyond repair, especially in the wake of the loss of business caused by the pandemic and the negative publicity from this case.  This would, in turn,

harm not only Mr. Fox's family, but also the families of the men Mr. Fox employs.   Mr. Fox recognizes how serious the January 6 incident was and in no way attempts to minimize his involvement in it. Nevertheless, his charge is a Class B misdemeanor for which probation is typically, though not presumptively, an appropriate sentence. Indeed, many felony offenses fall within a range that allows for a probationary sentence.  Mr. Fox did not come to Washington, D.C. intending to enter the Capitol building or disrupt the certification of the Electoral College. The government concedes that Mr. Fox committed no violent acts and destroyed no property. His actions within the Capitol have been tracked on the CCTV footage and this demonstrates that while unlawfully present in the Capitol with no excuse, he did not destroy property, steal property, commit violent acts, or encourage others to do so. He had no weapons. He committed no violence.  In short, while he is guilty of the misdemeanor petty offense of parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. §§ 5104(e)(2)(G) & 5109(b), he exhibited no aggravating conduct during the event.

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there appears to be no need for incapacitation, specific deterrence or rehabilitation. Mr. Fox's likelihood of recidivism is very low. Mr. Fox's acceptance of responsibility is complete and without reservation. Thus, the purposes of sentencing that seem most at play are general deterrence and punishment.

The public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for the others involved. Those who would not be deterred by these consequences are likely not deterrable. And, a sentence that leaves a young family in an untenable situation, when other reasonable alternatives exist, would

not promote respect for the law. Indeed, unnecessarily harsh sentences imposed upon those who were less culpable will not encourage respect for the law or promote just punishment, but may in fact be counter- productive. A period of probation does constitute punishment as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms. Mr. Fox urges the Court to adopt the Probation Office's recommendation in this case and impose a probationary sentence of 18 months in light of his significant family obligations, his sincere acceptance of responsibility, his initiative to address, through therapy, the source of his need for peer approval, and the lack of a need to further deter him.

The government offers several factors that it posits warrant a period of incarceration. The government points to the incendiary remarks Mr. Fox made on social media. Mr. Fox makes no excuses for those remarks. He recognizes that his words, as well as his presence in the Capitol, could have incited others and for that he is deeply regretful. He does not believe that these comments were appropriate, does not consider them to have been patriotic, and wishes more than anything he could go back in time and be wiser and more circumspect about the conspiracy theories and rhetoric he was swept into. When he saw someone break the Senate Wing window, Mr. Fox should have immediately left the area and returned to his car instead of continuing forward and climbing through that window. While he cannot change what he did, he can only sincerely apologize and say without hesitation that he will one day teach his sons the importance of not behaving in this manner. The government also points to statements made by Mr. Fox, suggesting that those statements shed light on Mr. Fox's intent. That is not the case. Though troubling, Mr. Fox's Facebook posts tell us more about what Mr. Fox was receiving positive reinforcement for than what Mr. Fox was genuinely thinking.

Mr. Fox came to D.C. with the purpose of showing support for Mr. Trump, but he never

intended to breach the Capitol and he never intended violence. The government acknowledges he brought no weapons with him.  In addition, Mr. Fox did not bring any Kevlar garments, gas masks, medical supplies, or anything else that would suggest that Mr. Fox went looking for or anticipating any type of physical conflict.   While Mr. Fox posted about going to the Trump rally before January 6th, he did not post on social media anything to suggest that he intended to engage in violence in any way. While he recalls that the law enforcement officers who were present when he climbed through the broken window did not tell anyone to leave (and indeed the video shows this), he has made no excuses for his behavior, doe not blame law enforcement for his predicament, and does not minimize his actions or rationalize them.

Another factor to consider is that Mr. Fox accepted full responsibility by pleading guilty in this case.  While it is not appropriate to punish an individual for asserting their right to go to trial and to have the government held to its burden of proof, there is a societal benefit when people who have done wrong acknowledge that wrongdoing in a public way, as Mr. Fox has done. This has a deterrent effect on future wrongdoing and has a positive effect on others taking responsibility for their actions.

On the issue of sentencing disparity, counsel appreciates that the government is attempting to set out meaningful distinctions in cases and some coherent rationale for the recommendations it makes. However, those distinctions are not as clear as the government suggests, and there is no scientific formula that will lead to sentencing uniformity. In a District with as many judges as this District has, there can be no definitive sentence that addresses the unique facts and circumstances of each case. The government cites comments made by several judges to the effect that defendants who plead guilty to this offense should not assume probation is appropriate.  Those comments are well-taken. However, in many of those cases, probation

was, in fact, was the actual resulting sentence. Further, the government cites several statements made by the Honorable Judge Moss in a prior sentencing proceeding about the effect of January 6 on our democracy, and it is hard to dispute those statements.[1] But, in the case where he made those statements, he nevertheless departed downward from the sentencing guidelines and imposed a sentence that was well-below that which the government sought.

In its sentencing memorandum the government has advocated that in fashioning its sentence, this Court should consider the following factors:

> (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition.

As Mr. Fox explains in his letter, attached herein as Defense Exhibit A, Mr. Fox came to Washington, D.C. on January 6th for two reasons alone: to finally attend a Trump rally and to see what "special" thing Donald Trump had planned, based on Trump's tweet that the rally "Will Be Wild!"  He attended President Trump's speech at the Ellipse and when Trump urged his supporters to march to the Capitol to protest, Mr. Fox followed his guidance and the wave of the crowd. At no point did he engage in violence. At no point did he engage in vandalism or theft. At no point did he encourage or incite others to do so.

He followed others through a broken window. CCTV footage confirms that at the time and place where he entered, the crowd inside was not engaging in acts of violence or vandalism.

---

[1] *See United States v. Paul Hodgkins*, 21-cr-188 (RDM).

Indeed, the footage shows numerous uniformed law enforcement officials standing by and even conversing casually with some of the protestors.  Once inside, CCTV footage shows him walking approximately 100 feet, from the window through which he entered directly to the nearest door, where he walked out of the building less than two minutes after entering. He had no agenda and no plan. He did not encourage or participate in violence. He was never part of a crowd that pushed past police, and did not see anyone push or assault police. Today, the Court has the benefit of viewing the omnipresent CCTV video footage to assess the actions of other individuals in the building, but on January 6, Mr. Fox was witnessing the events from his vantage point as a diminutive, 5'7" man. Mr. Fox took a selfie while inside the building and left about one minute after taking the photo.

    If this Court were to adopt the government's recommendation, as opposed to that of the Probation Office, it would result in sentencing disparity with other individuals who were similarly charged and behaved similarly. From the information counsel has been able to review, the government's recommendations have not necessarily been consistent. For example, the government recommended 3 years of probation with 2 months' home confinement for Danielle Doyle who also entered through a broken window. Worse, she yelled at officers inside the Capitol, and, according to the government, was not fully transparent in her interview with law enforcement. *See United States v. Danielle Doyle*, Crim. No. 21-00234 (TNM). It is hard to understand why the disparity between a custodial sentence for Mr. Fox and non-custodial sentence for Ms. Doyle would be warranted.  Ms. Doyle was ultimately sentenced to two months' probation and a $3,000 fine.

Similarly, in the cases of Jessica and Joshua Bustle, the government recommended probation with a short term of home confinement even though Ms. Bustle 1) posted on social media that Mike Pence was a traitor, 2) denied media accounts of violence were accurate, 3) minimized the conduct of all of the rioters, 4) called for a revolution even after the events of January 6, 5) encouraged the rioters to be proud of their actions, and 6) minimized the impact of that day on lawmakers and democracy. *See United States v. Jessica and Joshua Bustle*, 21-00238 (TFH). Judge Hogan imposed a probationary sentence with a short period of home confinement for Ms. Bustle and an even shorter period of home confinement for Mr. Bustle. *Id*.

The government also asked for probation with a period of home confinement for Mr. Andrew Bennett. United States v. Andrew Bennett, Crim. No. 21-227 (JEB). According to the government, Mr. Bennett espoused conspiracy theories about the election, was an admirer (albeit not a member) of the Proud Boys, and boasted about his conduct. According to the government, Mr. Bennett did not come to the rally in D.C. on a whim, but rather planned it for months. He posted numerous times about conspiracy theories and a fraudulent election. On January 4, 2021, he posted to his Facebook page, "You better be ready chaos is coming and I will be in DC on 1/6/2021 fighting for my freedom!". On January 6, according to the government, Bennet began livestreaming video to his Facebook page from outside the Capitol as early as 1:00 p.m. He was in the middle of the growing crowd on the West Front of the Capitol, where some taunted police officers and sporadically threw objects at them. The government alleges that someone near Bennett exhorted others to "move forward" and that Bennett yelled at a police officer. Bennett also filmed assaults on the police officers and continued to livestream events inside the building. The government recommended three months' home detention, three years of probation, and 60 hours of community service.  Mr. Bennett received the sentence recommended by the

government, but with only two instead of three years of probation.

Counsel points to these examples not to criticize the government -- it is surely not an easy task to compare cases and draw appropriate distinctions – but rather to note that there is no perfect formula.  What sets Mr. Fox's case apart is not simply his lack of aggravating conduct.  It is the initiative Mr. Fox has shown in seeking help for the root causes of his behavior.  The government has argued that Mr. Fox did not exhibit remorse until the "eve of sentencing."  The reality is that this arrest was jolt for Mr. Fox.  He had few friends growing up, and because of his diminutive stature, he was often taunted by both peers and his step-mother, often with offensive epithets.  As a teenager, he became interested in politics, and registered with the Green Party when some of his college classmates joined.  He remains registered Green Party even now. Along the way, he was exposed to Hinduism, which he latched onto, when he became close with an individual who spent time talking to him and taking him to the Hindu Temple in Pittsburgh. None of this is to say that his adherence to either his political party or spiritual faith is not genuine.  However, with his current arrest, Mr. Fox has begun to realize that he has often been motivated more by peer acceptance and attention than anything else.  Recognizing the dangerous actions this tendency brought him to on January 6th, Mr. Fox sought professional help after his arrest.  He meets with his therapist weekly, and he reports a slow improvement in his self-esteem.  He understands now that having greater self-confidence is intertwined with his ability to make better decisions, without regard for external validation.  In the end, this Court is faced with the task of meting out a just and appropriate sentence given all of the factors involved, and Mr. Fox places his trust in this Court to do just that.

Deterrence has already been achieved through Mr. Fox's arrest, his eight months of pretrial supervision with restrictions, federal conviction, public shaming, and the inescapable

(and perhaps deserved) notoriety and social stigma of being a January 6 defendant whose photograph has been posted online and in the media. Since his arrest, Mr. Fox has received numerous harassing phone calls on his business line. The case, and his actions of entering the Capitol Building on January 6, have also significantly damaged his relationships with loved ones, including his siblings. The consequences of his decision to enter the Capitol on January 6 will forever haunt him.

For the past fourteen months, the message to the general public that everyone who stepped foot inside the Capitol on January 6 will be found and prosecuted has resonated loud and clear. Entire websites and social media sites, such as SeditionHunters, have been established with the sole focus of identifying suspects and assisting law enforcement. Nationwide hotlines have been set up for anonymous tipsters to report on their friends, family members and acquaintances who entered the Capitol. Every day, images captured on January 6 from the vast network of CCTV cameras inside the Capitol flood the news. Photographs of all the suspects have been posted online and in the national media. Local media, too, abounds with coverage identifying local suspects, posting their pictures and discussing the investigation into their alleged actions. A sentence of confinement is greater than necessary to achieve the goal of general deterrence. A sentence of probation, with conditions including continuing mental health treatment and counseling, payment of restitution, and any other conditions the Court sees fit to impose is neither light nor lenient; it is appropriate and just.

For all these reasons, as well as any that become apparent to the Court during the sentencing hearing on March 11, 2022, Mr. Fox respectfully requests that the Court adopt the recommendation of the U.S. Probation Office and impose an 18-month term of probation. In the alternative, he asks that the Court consider a non-custodial sentence with a period of home

confinement except for work and to take his family to school, church, and medical appointments.

Respectfully submitted,

*/s/ Mythri Jayaraman*
MYTHRI JAYARAMAN

## CERTIFICATE OF SERVICE

I, Mythri Jayaraman, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, Federal Court Division Defender Association of Philadelphia, hereby certify that I have electronically filed and served a copy of the attached Defendant's Sentencing Memorandum via Electronic Case Filing upon Anthony L. Franks, Assistant United States Attorney, United States Attorney's Office, 555 4th St., NW, Washington, DC 20530.

/s/ Mythri Jayaraman
MYTHRI JAYARAMAN
Assistant Federal Defender

DATE:        February 28, 2022